IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
                        )
HARALD SCHMIDT,         )
                        )
    Plaintiff,          )
                        )
                        )
        v.              )      1:08cv165 (JCC)
                        )
                        )
CITIBANK (SOUTH DAKOTA), N.A.,)
                        )
    Defendant.          )
                        )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on the following eight

motions: (1) Defendant's Motion for an Order Confirming

Arbitration Award and for Entry of Judgment, (2) Plaintiff's

Motion to Dismiss Citibank's Motion for Order Confirming

Arbitration Award, (3) Defendant's Motion for Attorney's Fees and

Costs, (4) Plaintiff's Motion to Dismiss Citibank's Motion for

Attorney's Fees and Costs, (5) Plaintiff's Motion for Sanctions

and to Disallow Future Attorney's Fees and Costs, (6) Plaintiff's

Motion to Declare Defendant's Arbitration Agreement and Contract

Unenforceable and Unconscionable, (7) Plaintiff's Motion to Order

Defendant to Produce Documents Showing that the American

Arbitration Association Offers a Three-Judge Panel for Appeals,

and (8) Plaintiff's Motion to Continue the February 20, 2008

1

Hearing.  For the following reasons, the Court will deny Plaintiff's motions and grant Defendant's motions.

## I. Background

This case arises out of a dispute between Plaintiff Harald Schmidt ("Plaintiff") and Defendant Citibank (South Dakota), N.A. ("Defendant") regarding four credit card accounts issued by Defendant in Plaintiff's name between July 1996 and October 2001.  According to Defendant, Plaintiff owed a total of $13,808.17 on the accounts.  On October 16, 2007, Defendant brought suit against Plaintiff in the Fairfax County General District Court to collect the debt Plaintiff owes on one of the four accounts.  The Court is unaware of the result of that litigation.  On January 16, 2008, Plaintiff filed suit against Defendant in the Prince William County General District Court, claiming violations of the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, and the Virginia Consumer Protection Act and requesting rescission of the contract. Plaintiff sought to recover $12,800 from Defendant.

Subsequently, on February 25, 2008, Defendant removed the Prince William County lawsuit to this Court.  In an answer filed February 29, 2008, Defendant brought a counterclaim against Plaintiff, seeking a judgment of $13,808.17 based on the debts on all four accounts.  On May 16, 2008, Plaintiff moved to dismiss Defendant's counterclaim.  Defendant opposed the motion and the

Court heard arguments on June 6, 2008.  At the hearing, Plaintiff stated that he wanted to arbitrate the parties' claims pursuant to the terms of an arbitration agreement between the parties ("Agreement").  The Court stayed this case pending arbitration.

In July 2008, Plaintiff filed an Arbitration Demand with the American Arbitration Association ("AAA").  Defendant filed an answering statement and counterclaim.  An arbitration hearing took place on October 8, 2008.  The presiding arbitrator ("Arbitrator") issued his findings and awarded $16,270.47 to Defendant ("Award") on October 22, 2008.  The Award granted Defendant's first claim, for $11,424.84, and fourth claim, for $845.65.  It denied Defendant's second claim, for $656.90, and third claim, for $831.93.  It also denied all of Plaintiff's claims.  On November 13, 2008, following post-hearing submissions by the parties, the Arbitrator corrected a calculation error by reducing the amount awarded to Defendant by to $12,270.47.  Plaintiff did not appeal the Award.

On January 23, 2009, Defendant filed two motions: a Motion for Order Confirming Arbitration Award and for Entry of Judgment, and a Motion for Attorney's Fees and Costs.  On February 2, 2009, Plaintiff filed a Motion for Sanctions and to Disallow Future Attorney's Fees and Costs.  On February 4, 2009, he filed two more motions: a Motion to Dismiss Defendant's Motion and Order New Arbitration Hearing or Trial by Jury and a Motion

to Dismiss Citibank's Motion for Attorney's Fees and Costs.
Defendant opposed Plaintiff's three motions on February 10.

On February 12, 2009, Plaintiff filed a Motion to
Declare Defendant's Arbitration Agreement and Contract
Unenforceable and Unconscionable and a Motion to Order Defendant
to Produce Documents Showing that the American Arbitration
Association Offers a Three-Judge Panel for Appeals.  On February
17, 2009, Plaintiff filed a Motion to Continue the February 20,
2008 Hearing.  Defendant opposed these motions on February 17,
2009.

On February 18, 2009, Plaintiff contacted the Court and
requested that the hearing scheduled in this matter on February
20 be continued to a later date on account of Plaintiff's health.
Defendant had no objection and the Court continued the hearing
until March 6.  Because the Court granted a continuance for a
different reason than that contained in Plaintiff's Motion to
Continue, it considers that motion as still pending.  Thus, these
eight motions above are currently before the Court.

## II.  Analysis

A.  <u>Defendant's Motion for Order Confirming
Arbitration Award and for Entry of Judgment</u>

Defendant moves the Court, pursuant to 9 U.S.C. § 9,
for an order confirming the Award.  Section 9 provides: "If the
parties in their agreement have agreed that a judgment of the
court shall be entered upon the award made pursuant to the

4

arbitration," and if the prevailing party applies for such a judgment "at any time within one year after the award is made," then the Court "must grant [] an order [entering the arbitrator's award] unless the award is vacated, modified, or corrected" pursuant to 9 U.S.C. §§ 10-11.  *Id.* at § 9.

      1.  *9 U.S.C. § 11: Vacating the Award*

Section 11 permits the Court to vacate an award, "upon the application of any party to the arbitration," in three specified situations.  *Id.* at § 11.  Plaintiff has not moved this Court to vacate (or modify) the Award; he has, however, moved to dismiss Defendant's motion to Confirm the Award.  Given Plaintiff's *pro se* status, the Court will presume that Plaintiff intended to ask the Court to vacate or modify the Award under §§ 10-11.

The first situation in which a court may vacate an arbitration award is "[w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award."  *Id.* at § 11(a).  Plaintiff does not claim that there were any mere miscalculations in the amount awarded.  *See* Pl.'s Mot. to Dismiss.  The Court may also vacate an award "[w]here the arbitrators have awarded upon a matter not submitted to them" or "[w]here the award is imperfect in matter of form not affecting

5

the merits of the controversy."  9 U.S.C. 11(b)-(c).  Plaintiff raises no such arguments.

> 2.  *9 U.S.C. § 10: Modify or Correct the Award*

Section 10 allows the Court to modify or correct an award "upon the application of any party to the arbitration" in four specific situations.  *Id.* at § 10.  The Court may modify an award "procured by corruption, fraud, or undue means."  *Id.* at § 10(a)(1).  It may also modify an award if: (i) "there was evident partiality or corruption in the arbitrators," (ii) the arbitrators "were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy[,] or of any other misbehavior by which the rights of any party have been prejudiced," or (iii) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *Id.* at § 10(a)(2)-(4).

In his motion to dismiss, Plaintiff argues that the Award "and the events leading to [it] have several judicial erros [sic] and are based on false and misleading statements by counsel for Defendant."  Pl.'s Mot. to Dismiss at 1.  He submits that Defendant's counsel made a false statement when he told the Arbitrator that he had mailed Defendant's document production to

Plaintiff.  Plaintiff claims that he did not receive the documents until January 2009.  *Id.* at 1 and Ex. A at 6.

Plaintiff also argues that the Arbitrator erred by denying his request to postpone the arbitration hearing. Plaintiff submits that he was unable to attend the hearing because Defendant's documents were not delivered to him in a timely fashion.  *Id.* at 2.  He states that he called the Arbitrator on the day of the hearing, to "express[] his objection for the hearing [sic] without him which was ignored by the arbitrator."  *Id.* at 2.  Finally, Plaintiff complains that the Arbitrator did not consider Plaintiff's documentary evidence before ruling on this matter.

The Court finds that none of these arguments provides it with a reason to modify the Award.  The Arbitrator adequately addressed both of Plaintiff's objections.  He noted Plaintiff's assertion that he had not received Defendant's document production, but found "no reason to believe that Citibank did not comply with [the] directive to furnish copies of all relevant documents to Mr. Schmidt."  Award at 1.  In any event, the Arbitrator noted, the documents were available for Plaintiff's review at the hearing.  Arbitrator's Ruling on Req. for Postponement of Hr'g, Oct. 7, 2008, at ¶ 5.

The Arbitrator also addressed Plaintiff's request for a postponement of the hearing.  *Id.*; Award at 1.  Defendant opposed

that request because it had already made arrangements and incurred expenses for an out-of-town witness to appear at the hearing.  Award at 1.  The Arbitrator stated that he denied Plaintiff's request for that reason, but that he permitted Plaintiff to appear at the hearing by telephone.  *Id.*

Finally, Plaintiff raises his claim that the Arbitrator did not consider documentary evidence that Plaintiff was unable to produce for the first time here.  Pl.'s Mot. to Dismiss at 2. The Arbitrator thus did not have the opportunity to address it. Plaintiff's motion fails to explain, however, why he was "unable to produce" this evidence or why he did not alert the Arbitrator to the information that he wished to produce.  Plaintiff filed the arbitration action on July 10, 2008.  The Arbitrator held the hearing on October 8, 2008, after giving the parties twenty-two days' notice of the hearing.  Award at 1.  Plaintiff never submitted any information for the Arbitrator's consideration, although he had time to do so.  *Id.*

"An application for [an order confirming an arbitration award] will get streamlined treatment as a motion, obviating the separate contract action that would usually be necessary to enforce or tinker with an arbitral award in court."  *Hall Street Assoc., L.L.C. v. Mattel, Inc.*, __ U.S. __, 128 S. Ct. 1396, 1402 (2008).  A court will set aside an arbitration award only in

"very unusual circumstances."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).

"[A]ny judicial review of an arbitration award is extremely limited, and is, in fact, among the narrowest known to the law."  *Long John Silver's Restaurants, Inc. v. Cole*, 514 F.3d 345, 349 (4th Cir. 2008) (citations omitted).  "[A] reviewing court is entitled to determine only whether the arbitrator did his job."  *Id.*  "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."  *Id.; see also Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007).  None of Plaintiff's three complaints raise a real question about whether or not the arbitrator acted within the scope of his authority.  Given this standard of review, the Court finds that Plaintiff has not presented any reason to modify the Award.

Finally, Plaintiff argues that the Award is not final because the arbitration agreement between the parties provides for an appeal to a three-arbitrator panel, but the AAA did not offer such an appeal.  *Id.*  He submits a January 30, 2009 e-mail from his AAA case manager telling Plaintiff that "the AAA does not have an appeals process.  I am unsure what you are referencing with regards to the 3 judge panel."  *Id.*, Ex. A at 3.

Plaintiff did not state when he originally contacted his case manager about an appeal.

This final argument has no merit.  The Agreement provides that "[t]he arbitrator's award is final and binding on the parties unless a party appeals in writing to the arbitration firm within fifteen days of notice of the award.  The appeal must request a new arbitration before a panel of three neutral arbitrators."  *Id.*, Ex. A at 7.  Plaintiff does not claim that he followed these procedures.  Rather, he claims that he did not follow these procedures, and that the AAA case manager informed him, approximately two months after the Award, that such an appeal was not available through the AAA.  This argument is not convincing because it is clear that Plaintiff did not follow the appeal procedures provided in the Agreement.  Any attempts at advice by an AAA case manager do not provide a basis on which the Court can or should modify the Award.  The Award is therefore final.  *See id.*  Accordingly, the Court will grant Defendant's motion to confirm the Award.

      B.   <u>Plaintiff's Motion to Dismiss Defendant's Motion and Order New Arbitration Hearing or Trial by Jury</u>

For the reasons given above, the Court will deny Plaintiff's Motion to Dismiss Defendant's Motion and Order New Arbitration Hearing or Trial by Jury.

C.   <u>Defendant's Motion for Attorney's Fees and Costs</u>

Citibank argues that it is entitled to reasonable attorneys' fees and costs under the Agreement.  Defendant prevailed on two of its four claims in the arbitration and all of Plaintiff's claims.  Defendant now seeks reimbursement of attorneys' fees and costs and expenses incurred both during and prior to the arbitration.  They seek attorney's fees in the amount of $30,756.60 and costs in the amount of $1,901.87.  Def.'s Mot. for Att'y Fees at 3.  In support of its motion, Defendant submitted two declarations by Timothy C. Bass, lead counsel in this matter.  The first was dated January 23, 2009 ("Jan. 23 Declaration") and the second May 12, 2009 ("May 12 Declaration").

As noted in section I above, this action originally came before the Court on a notice of removal of a suit filed by Plaintiff in state court. [Dkt. 1].  The parties litigated these claims before the Court until Plaintiff stated his intention to elect binding arbitration under the Agreement and the Court stayed this action.  [Dkt. 22].  Thus, in addition to having the jurisdiciton to confirm the Award, the Court retains jurisdiction over what occurred before the election of arbitratoin.  Thus, as requested by the parties, the Court will also evaluate Defendant's request for an award of those attorney's fees and costs incurred prior to the election of arbitration.

1.   *Attorney's Fees and Costs Incurred During Arbitration*

The Agreement's terms regarding arbitration provide that "[w]hoever files the arbitration pays the initial filing fee."  Jan. 23 Decl., Ex. A at 2 (Notice of Change in Terms Regarding Binding Arbitration).  The Agreement further states, "[i]f there is a hearing, [Citibank] will pay any fees of the arbitrator and arbitration firm for the first day of that hearing.  All other fees will be allocated as provided by the rules of the arbitration firm and applicable law."  *Id.*  It also provides that "[e]ach party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines."  *Id.*  Finally, it states that arbitration awards entered pursuant to the Agreement become "final and binding on the parties unless a party appeals in writing to the arbitration firm within fifteen days of notice of the award."  *Id.*

In the Award, the Arbitrator noted that "Citibank [] seeks an award of attorneys' fees and other costs associated with the pursuit of its claims."  *Id.* at 2.  He acknowledged that Defendant's counsel "submitted his firm's billing summary for $31,351.23," but ultimately concluded that "[t]he issue of attorney's fees is to be determined by the court."  *Id.* at 3.

12

It appears that the Arbitrator attempted to delegate the resolution of one of the issues presented to it, whether Defendant merited an award of attorney's fees under the Agreement, to the Court.  The Arbitration Clause of the Agreement, however, clearly provides that each party will bear its own attorney's fees, unless "the arbitrator, applying applicable law, so determines."  Jan. 23 Decl., Ex. A at 2 (Notice of Change in Terms Regarding Binding Arbitration).  The Agreement's default provision for attorney's fees incurred during arbitration then, expressly provides for the American Rule, in which each party is responsible for its own.

The Agreement gives the Arbitrator the authority to override this default, but in this case, the Arbitrator chose not to affirmatively do so.  He acknowledged that the issue of Defendant's attorney's fees, and evidence thereof, was before him, but he declined to award those fees himself.  Award at 3. He did choose, however, to allocate the parties' arbitration costs, as provided for in the same clause of the Agreement.  *Id.* at 4.  And he used his discretion to require Defendant to reimburse Plaintiff for part of the excess costs that Plaintiff had paid.  *Id.*  Because the Arbitrator failed to actually decide the matter of attorney's fees, and especially because he made no such failure with respect to the parties' expenses, the Court finds that the Arbitrator, whether intentionally or not, did not

override the Agreement's default allocation of arbitration attorney's fees.  The Court finds no any authority from which it can read into the Award an intent by the Arbitrator to override that default provision and award attorney's fees to Defendant.

It is also clear that the Award, as modified by the Arbitrator after a post-hearing briefing, is final.  The Agreement clearly provides for binding arbitration.  Jan. 23 Decl., Ex. A at 2 (Notice of Change in Terms Regarding Binding Arbitration) (Either party may "elect mandatory binding arbitration for any claim, dispute or controversy.").  Plaintiff elected such an arbitration, an award was entered, and neither party appealed that award using the procedure specified in the Agreement.

Finally, as noted above, the Award does not merit modification or correction under 9 U.S.C. §§ 10 or 11.  *See* Section III.A, above.  Neither party has identified any other procedure by which this Court may change or reopen the Award. The Court thus has no authority by which to do so.  It is plainly appropriate to confirm the Award as written.  The Court must deny Defendant's request for attorney's fees incurred during the arbitration proceedings.

2.   *Attorney's Fees and Costs Incurred Prior to Arbitration*

Outside of the Agreement's provisions governing arbitration, a "Collection Costs" clause states that, if Citibank

14

"refer[s] collection of your account to a lawyer who is not [Citibank's] salaried employee, you will be liable for any reasonable attorneys fees [Citibank] incur[s], plus the costs and expenses of any legal action, to the extent permitted by law." Agm't at 7.

This clause, on its face, governs "any legal action." This suit, filed by Plaintiff in the state court and removed to this Court by Defendant, is a "legal action" under the Agreement. The Court finds that, on its face, this clause applies to those costs and fees incurred by Defendant in this action.  It does not, however, apply to expenses during arbitration, which are governed by the separate and more specific Arbitration Clause.

In accordance with the Collection Costs clause, Defendant is entitled to recover reasonable attorney's fees paid to non-Citibank employees prior to Plaintiff's election of binding arbitration of the parties' disputes.  The Court must next evaluate the reasonableness of the specific pre-arbitration amounts that Defendant seeks to recover.

3.  *Reasonable Fee*

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994).

15

The party requesting fees bears the burden of demonstrating the reasonableness of what it seeks to recover. *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990); *Cook v. Andrews*, 7 F. Supp. 2d 733, 736 (E.D. Va. 1998).

To determine "what constitutes a 'reasonable' number of hours and rate . . . a district court's discretion should be guided by the following twelve factors" first set out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974))*. Robinson v. Equifax Info. Servs., LLC*, __ F.3d __, 2009 WL 656814, at *6 (4th Cir. Mar. 16, 2009) (citations omitted). Those factors are:

(1) The time and labor required . . . .
(2) The novelty and difficulty of the questions . . . .
(3) The skill requisite to perform the legal service properly . . . .
(4) The preclusion of other employment by the attorney due to the acceptance of the case . . . .
(5) The customary fee . . . .
(6) Whether the fee is fixed or contingent . . . .
(7) Time limitations imposed by the client or the circumstances . . . .
(8) The amount involved and the results obtained . . . .
(9) The experience, reputation, and ability of the attorneys . . . .
(10) The "undesirability" of the case . . . .
(11) The nature and length of the professional relationship with the client . . . [and]
(12) Awards in similar cases.

*Johnson*, 488 F.2d at 717-19.

After determining the amount of reasonable hours and fees, the "the court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Robinson*, __

16

F.3d __, 2009 WL 656814, at *6 (internal quotations and citations omitted).  Finally, the court should "award[] some percentage of the remaining amount, depending on the degree of success enjoyed."  *Id.*

> a.  <u>Reasonable Hours</u>

The invoices that Defendant submitted with its motion show that counsel spent 89.2 hours pursuing Defendant's claims up until Plaintiff elected arbitration.  The Court will evaluate the reasonableness of these hours using the *Johnson* factors.

First, Plaintiff argues that Defendant increased the number of hours incurred by failing to elect arbitration at the outset of this dispute.  Pl.'s Mot. to Dismiss Mot. for Att'y Fees at 1.  He claims that Defendant improperly chose to file a warrant in debt against Plaintiff in Virginia state court rather than immediately pursue arbitration.  He also submits that, after he filed a separate suit against Defendant in a different Virginia state court, Defendant responded by removing the case to federal court rather than electing arbitration.  *Id.*

The Arbitrator "agree[d] with Mr. Schmidt that Citibank might have been better served to have pursued its claims against Mr. Schmidt ab initio through the arbitration clause."  Award (Modified) at 1.  He "assume[d] that the court will take that fact into consideration when determining the reasonableness of

Citibank's claim for attorney's fees." Award (Modified) at ¶ 4. Defendant counters by arguing that that Plaintiff increased the hours incurred by its counsel by filing repeated frivolous motions.[1]

The Court will not reduce Defendant's requested fees for its failure to elect arbitration of this dispute in the first instance. This decision increased its total legal fees, but was well within its rights under the Agreement. Plaintiff's numerous and frivolous motions also provide an additional reason not to reduce Defendant's fees for that decision.

Second, it appears that the novelty and difficulty of the questions presented in this case were low. This is a simple debt-collection action. There was no special skill required to perform this legal service for Defendant; no party has submitted otherwise.

Neither party makes any representations about the applicability of factors 4 (preclusion of other employment), 7 (time limitations), 9 (experience, reputation, and ability of the attorneys), or 10 (the "undesirability" of the case). Thus, these factors favor neither party.

---

[1] After Defendant removed Plaintiff's claims to federal court, Plaintiff filed a Motion to Dismiss Defendant's Counterclaims, failed to respond to Defendant's discovery requests (prompting a motion to compel), and failed to appear for the first status conference, although he did appear at a rescheduled conference.

18

Defendant documented its attorney's fees by submitting the Jan. 23 Declaration and the invoices it received from counsel.  The invoices show that Defendant's counsel charged it by the hour for legal work on this case.  Defendant also received a 10% "courtesy discount" on each invoice, indicating the likelihood of an ongoing relationship with counsel.

This case involved four claims and a disputed amount of $13,808.27.  The Court did not address the merits of these claims, but notes that the Arbitrator awarded $12,270.47[2] to Defendant: $11,424.84 on claim 1 and $845.65 on claim four.  The arbitrator denied the second and third claims.

The overall reasonableness of the hours Defendant's counsel expended on this matter is also supported by the Jan. 23 Declaration, in which Defendant's lead counsel asserts that its "itemization of costs is reasonable for the work performed." Jan. 23 Decl. at 2.  More information from Defendant would have been useful in evaluating this issue. The Court finds, however, based on the above evaluation of the *Johnson* factors, the unopposed assertion by Defendant's counsel in his affidavit, and the Court's "personal knowledge and experiences in lieu of [further] substantive evidence," *see Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987), that the hours expended by Defendant in this matter, prior to arbitration, are reasonable.

---

[2] It appears that the correct total of the final (modified) award should have been $12,270.49; neither party contests this error.

b.   <u>Reasonable Rate</u>

The attorneys' hourly rates must also be reasonable. *Rum Creek*, 31 F.3d at 175 (citing *Hensley*, 461 U.S. at 433). "This determination is fact-intensive and is best guided by what attorneys earn from paying clients for similar services in similar circumstances." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "[T]he burden rests with the fee applicant to establish the reasonableness of a requested rate." *Robinson*, ___ F.3d ___, 2009 WL 656814, at *7 (*quoting Plyler*, 902 F.2d at 277). To meet this burden, "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Id.*

An attorney's actual billing rate provides a "starting point" for establishing a prevailing market rate. *Rum Creek*, 31 F.3d at 175 (citing *Gusman v. Unisys Corp.*, 986 F.2d 1146 (7th Cir. 1993)). The prevailing party can establish the market rate "through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of the actual rates which counsel can command in the market." *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir.

1987 (citations omitted).  This evidence must be submitted "[i]n addition to the attorney's own affidavits."  *Plyler*, 902 F.2d at 277 (citations omitted).

To help carry its burden to establish the prevailing market rates in the relevant community, Defendant submitted invoices showing that its counsel charged $390 per hour for work by a partner, $350 per hour for work by an associate, $260 per hour for work by a law clerk, and $175-$240 per hour for work by paralegals on this matter.  Jan. 23 Decl. at ¶ 3.  It also provided information on the hourly rates previously charged to and paid by it in a similar matter.  The same attorneys and paralegals performed work on both cases in 2008.  May 18 Decl. at ¶ 3.  For each employee, the rates were exactly the same.[3]

The Court finds that Defendant has submitted sufficient information from which to determine that the hourly rates charged are reasonable.  In the Fourth Circuit, the rates actually charged by a petitioning attorney are evidence of reasonableness when it is shown that they have collected those rates in the past from the client.  *Rum Creek*, 31 F.3d at 175.  Defendant has asserted, and submitted evidence showing, that it paid identical

---

[3] Defendant also submitted the Laffey Matrix, an official statement of market-supported reasonable attorney fee rates which was adopted by the United States Court of Appeals for the District of Columbia.  *See Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 24-25 (D.C. Cir. 1984), *overruled in part on other grounds by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988) (en banc).  This Court notes that the Laffey Matrix is not binding upon this Court and is of questionable relevance in the Eastern District of Virginia.  *Robinson*, __ F.3d __, 2009 WL 656814, at *7.

hourly rates to counsel in a similar case in the past.  On May 27, 2009, Plaintiff submitted a response to the May 18 Declaration.  Nothing in this document convinces the Court that the hourly rates paid by Defendant are not reasonable.  The Court finds that Defendant has submitted information sufficient to show that its rates are reasonable.

        c.    <u>Subtract for Unrelated Unsuccessful Claims</u>

Plaintiff argues that the Court should not award attorney's fees to Defendant for the two claims decided in Plaintiff's favor.  *Id.* at 2.  Plaintiff is correct that, when the petitioning attorney "prevails on only some of the claims made, the number of hours may be adjusted downward."  *Rum Creek*, 31 F.3d at 174.  This type of downward adjustment only applies to "unsuccessful claims unrelated to successful ones."  *Robinson,* __ F.3d __, 2009 WL 656814, at *7 (4th Cir. Mar. 16, 2009) (internal quotations and citations omitted).

In this case, the Court will not apply a downward adjustment to the hours claimed by Defendant because all four claims were related.  These claims concerned Plaintiff's alleged default on four credit cards opened by Plaintiff with Defendant.  The two successful claims were thus not unrelated to the two unsuccessful claims.  The attorney's fees incurred in pursuing them are thus not separable by claim.

d.    <u>Final Percentage Award Based on Success</u>

The Court will grant one hundred percent of
Defendant's request for attorney's fees, given his complete
success on the remaining claims.  Attorney's fees will be awarded
to Defendant in the amount if $27,355.80.

4.    *Defendant's Claimed Expenses*

In the Award, the Arbitrator specifically allocated
certain arbitration expenses between the parties.  It provided
that the $950.00 AAA filing and service fee "shall be borne as
incurred," by Plaintiff.  Award at 4.  It also provided that
$750.00 in fees and expenses for the arbitrator "shall be borne
entirely by Citibank, N.A."  *Id.*  Finally, the Award stated that
"Citibank, N.A. shall reimburse Harald Schmidt the sum of
$125.00, representing that portion of said fees and expenses in
excess of the apportioned costs previously incurred by Harald
Schmidt. . . . to be paid within thirty (30) days from when the
award has become final."  *Id.*

Defendant now seeks an award of $1,901.87 in costs and
expenses.  Def.'s Mot. for Att'y Fees at 3.  Defendant provides
the invoices issued by its counsel in this matter to show why it
is entitled to this amount.  The invoices show the following
expenses: (1) $350.00 - filing fee United States District Court,
(2) $3.80 - photocopying, (3) $24.93 - Westlaw research, (4)
$50.00 - Clerk of Court Filing Fee, (5) $6.38 - Federal Express

23

Charges, (6) $196.50 - Photocopy Charges, (7) $5.76 - Information
and Research, (8) $44.84 - Information and Research, (9) $875.00
- AAA Arbitration filing fee, (10) $14.46 - Westlaw research,
(11) $950.00 - AAA Arbitration filing fee, (12) $5.20 -
Photocopies, (13) $125.00 - Harald Schmidt Excess Fees for
Arbitration.

At the hearing, Defendant withdrew any request it may
have submitted for (1) the $750.00 in arbitrator fees and
expenses that the Arbitrator specifically assigned to it, (2) the
$125.00 in fees for which the Award specifically required it to
reimburse Plaintiff, (3) another $125.00 in undescribed
arbitration fees, and (4) the $950.00 AAA initial filing fee
that, according to the Award, was paid by Plaintiff, not
Defendant.

For the same reasons given above in Section III.C.1,
the Court has not basis on which to modify or correct the Award,
including its allocation of arbitration costs and expenses
between the parties.  It also may not award any arbitration costs
or expenses not allocated by the Award.  It finds, however, that
the "Collection Costs" clause of the Agreement applies to any
costs and expenses that Defendant incurred prior to Plaintiff's
election of arbitration.

Based on the dates of the invoices provided, it appears
that the following expenses were incurred prior to Plaintiff's

election of Arbitration: $350.00 - filing fee United States District Court, (2) $3.80 - photocopying, (3) $24.93 - Westlaw research, (4) $50.00 - Clerk of Court Filing Fee, (5) $6.38 - Federal Express Charges, (6) $196.50 - Photocopy Charges, (7) $5.76 - Information and Research, and (8) $44.84 - Information and Research.

The Collection Costs clause permits Defendant to recover "the costs and expenses of any legal action, to the extent permitted by law." Agm't at 7.  Under the Agreement, then, Plaintiff must reimburse Defendant for these amounts, a total of $701.87.

> D.   Plaintiff's Motion to Dismiss Citibank's Motion for Attorney's Fees and Costs

Plaintiff requests that the Court dismiss Defendant's motion for attorney's fees and costs.  For the reasons given above, in section III.C, the Court will deny Plaintiff's Motion to Dismiss Citibank's Motion for Attorney's Fees and Costs.

> E.   Plaintiff's Motion for Sanctions and to Disallow Future Attorney's Fees and Costs

Plaintiff asks the Court to award sanctions against Defendant for sending him a threatening and intimidating e-mail and for not electing arbitration in the first instance. Pl.'s Mot. for Sanctions at 1.  Defendant did not oppose this motion.

Plaintiff's motion alleges that "on or before January 24, 2009 Citibank thru [sic] counsel sent e mail [sic] threaten

[sic] and trying to intimidate the Plaintiff by stating . . . 'we must also advice [sic] you that, if you file further motions and/or appeals, we will seek to recover from you the additional attorneys fees that are incurred in responding to the same.'" Pl.'s Mot. for Sanctions at 1.  A message of this type is a reasonable warning to an opposing party and does not warrant sanctions.

Defendant's failure to voluntarily elect arbitration of its claims against Plaintiff also does not warrant sanctions, as the Agreement permits both parties to bring their claims in court or through arbitration.  *See* Jan. 23 Decl., Ex. A at 2 (Notice of Change in Terms Regarding Binding Arbitration).  Finally, Plaintiff may dispute any future attorney's fees and costs at the time that Defendant requests them.  The Court will deny Plaintiff's Motion for Sanctions and to Disallow Future Attorney's Fees and Costs.

F.    Plaintiff's Motion to Declare the Arbitration
      Agreement Unenforceable and Unconscionable

In this motion, Plaintiff requests that the Court declare the Agreement "unenforceable and unconscionable."  Pl.'s Mot. to Declare at 1.  He argues that the Agreement favors Defendant and gives it "an unfair advantage" in a legal or arbitration action brought against it.  *Id.*  Plaintiff also argues that Defendant breached the Agreement by filing suit

against him and many other cardholders without first offering arbitration. *Id.*

Defendant responds that Plaintiff waived any right to object to the Agreement by electing to proceed with arbitration in open court and filing a claim with the AAA. Def.'s Consol. Opp'n at 4-5. Defendant also submits that the "Agreement has repeatedly been upheld by courts across the country, many of which having rejected [sic] arguments based on unconscionability." *Id.* at 5 (citations omitted).

Plaintiff elected to pursue arbitration under the Agreement, making the arbitration results binding on both parties. During the arbitration proceeding, the Arbitrator heard a claim by Plaintiff that no valid and binding agreement existed between the parties. Award (Modified) at 1. The Arbitrator decided against Plaintiff on this matter. *Id.* Plaintiff may not now raise another argument going to the validity of the parties' agreement merely because the Arbitrator issued an award in Defendant's favor. Finally, Plaintiff fails to put forth a legitimate argument that the arbitration clauses of the Agreement are unenforceable or unconscionable. The Court will deny this motion.

G.  <u>Plaintiff's Motion to Order Defendant to Produce
Documents Showing that the AAA Offers a Three-
Judge Panel for Appeals</u>

Plaintiff also moved for the Court to order Defendant
to produce documents showing that the AAA offers a three-
arbitrator appeal.  The hearing on this motion occurred on March
6, 2009.  On March 9, 2009, Plaintiff filed a letter addressed to
the Court and included 13 pieces of correspondence between
himself and the AAA.  On March 18, 2009, he filed a "Response to
letter from Defendant about the attempt to appeal" attaching some
of the same correspondence.  The Court finds that these
submissions put no new information before the Court.  Thus, for
the reasons given above in section III.A.2, the Court will deny
Plaintiff's Motion to Order Defendant to Produce Documents
Showing that the AAA Offers a Three-Judge Panel for Appeals.

H.  <u>Plaintiff's Motion to Continue the Hearing</u>

In this motion, Plaintiff petitions the Court to
continue the hearing on these motions "until the time that a
legal and procedural issue with AAA [] has been resolved."  Pl.'s
Mot. to Continue at 1.  Plaintiff's motion refers to his claim
that he was unable to appeal the Award because the AAA does not
have an established appeal process.  Because the Court has
already denied Plaintiff's Motion to Order Defendant to Produce
Documents Showing that the AAA Offers a Three-Judge Panel for
Appeals, the Court will deny this motion as moot.

28

### III.   Conclusion

For these reasons, the Court will deny Plaintiff's motions and grant Defendant's motions.

An appropriate Order will issue.


April 10, 2009                    _____/s/_____
Alexandria, Virginia                      James C. Cacheris
                                 UNITED STATES DISTRICT COURT JUDGE